SA25CA1743 FB

AO 243 (Rev. 01/15)

Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Western District of Texas (San Antonio) |
|---|---|---|
| Name *(under which you were convicted)*: <br> Diego Alvizo | | Docket or Case No.: <br> 5:18-cr-00275; 5:21-cr-00352 |
| Place of Confinement: <br> FMC Fort Worth | Prisoner No.: <br> REG. NO. 37232-180 | |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* | |
| V. | DIEGO ALVIZO | |

FILED
DEC -8 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**MOTION**

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

    United States District Court
    Western District of Texas
    San Antonio Division

    (b) Criminal docket or case number (if you know):  5:18-cr-00275-FB-6; 5:21-cr-00352-FB-2

2. (a) Date of the judgment of conviction (if you know):  11/22/2024

    (b) Date of sentencing:  11/12/2024

3. Length of sentence:  240 months

4. Nature of crime (all counts):

    1. 5:18-cr-00275-FB-6
    Ct 1: Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.; Cts 2, 5: Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).
    2. 5:21-cr-00352-FB-2
    Please see Memorandum of Law in Support.

5. (a) What was your plea?  (Check one)

    (1) Not guilty ☐      (2) Guilty ☑      (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

    Guilty on Count 1 of Case No. 5:18-cr-00275-FB-6;
    Guilty on Count 1 of Case No. 5:21-cr-00352-FB-2.

6. If you went to trial, what kind of trial did you have?  (Check one)      Jury ☐      Judge only ☑

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?      Yes ☐      No ☑

8. Did you appeal from the judgment of conviction?      Yes ☐      No ☑

9. If you did appeal, answer the following:

(a) Name of court:  N/A

(b) Docket or case number (if you know):  N/A

(c) Result:  N/A

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised:

(g) Did you file a petition for certiorari in the United States Supreme Court?      Yes ☐      No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
Yes ☐      No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4)  Nature of the proceeding:

(5)  Grounds raised:

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket of case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised:

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:      Yes ☐      No ☐

(2)  Second petition:      Yes ☐      No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:**    Ineffective Assistance of Pretrial Counsel

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Pretrial Counsel's Failure To:

(1) Communicate with Alvizo and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (
2) Conduct An Adequate and Independent Pretrial Investigation; and
(3) Attempt to Negotiate A Favorable Plea Agreement Deprived Alvizo of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

Please See Memorandum of Law in Support.

(b)  **Direct Appeal of Ground One:**

(1)    If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)    If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)    Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☑

(2)    If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)    Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐

(4)    Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5)    If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:**      Ineffective Assistance of Sentencing Counsel

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Sentencing Counsel's Failure To:

(1) Properly Discuss and Explain the PSR to Alvizo Prior to the Sentencing Hearing;
(2) File Substantive Objections to the PSR Deprived Alvizo of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence;
(3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable; and
(4) File a Notice of Appeal and Preserve Appellate Rights deprived Alvizo of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.
Please see Memorandum of Law in Support.

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)  Did you receive a hearing on your motion, petition, or application?

      Yes ☐     No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND THREE:**   N/A

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

AO 243 (Rev. 01/15)                                                                                          Page 8

**(b) Direct Appeal of Ground Three:**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☐

    (2)   If you did not raise this issue in your direct appeal, explain why:

**(c) Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

    (3)   Did you receive a hearing on your motion, petition, or application?

        Yes ☐      No ☐

    (4)   Did you appeal from the denial of your motion, petition, or application?

        Yes ☐      No ☐

    (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐      No ☐

    (6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   N/A

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

N/A

(b)  **Direct Appeal of Ground Four:**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐          No ☐

    (2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐          No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?          Yes ☐          No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

Jaime Efrain Cavazos, Law Office of Jaime Cavazos, 1430 South Flores Street, San Antonio, TX 78204

(b) At the arraignment and plea:

Jaime Efrain Cavazos, Law Office of Jaime Cavazos, 1430 South Flores Street, San Antonio, TX 78204

(c) At the trial:

N/A

(d) At sentencing:

Jaime Efrain Cavazos, Law Office of Jaime Cavazos, 1430 South Flores Street, San Antonio, TX 78204

(e) On appeal:

N/A

(f) In any post-conviction proceeding:

N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☑

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

N/A

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 13

Therefore, Alvizo respectfully requests that the Court grant the following relief:

Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record or any other relief to which this Court deems that he may be entitled.

Respectfully submitted,

DIEGO ALVIZO
REG. NO. 37232-180
FMC FORT WORTH
FEDERAL MEDICAL CENTER
P.O. BOX 15330
FORT WORTH, TX 76119
Appearing *Pro Se*

## DECLARATION OF DIEGO ALVIZO

I, Diego Alvizo, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746.

Dated: December 5, 2025

DIEGO ALVIZO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DIEGO ALVIZO,                          §
                                       §
            Movant,                    § **SA25CA1743 FB**
                                       §
v.                                     §   Civil No.  5:25-cv-_____
                                       §   Crim Nos. 5:21-cr-00352-FB-2;
UNITED STATES OF AMERICA,              §            5:18-cr-00275-FB-6
                                       §
            Respondent.                §

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND MEMORANDUM OF LAW IN SUPPORT

COMES Movant, DIEGO ALVIZO ("Alvizo"), appearing *pro se*, and in support

of this motion would show as follows:

## I. JURISDICTION

Alvizo is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by

a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion")

contemporaneously with this Memorandum of Law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of the

Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562

(1994).

1

## II. STATEMENT OF THE GROUND FOR RELIEF

A.      Whether pretrial counsel's failure to: (1) Communicate with Alvizo and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Alvizo of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

B.      Whether sentencing counsel's failure to: (1) Properly Discuss and Explain the PSR to Alvizo Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR Deprived Alvizo of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence; (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable; and (4) File a Notice of Appeal and Preserve Appellate Rights deprived Alvizo of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

## III. STATEMENT OF THE CASE

A.      **Procedural Background**

1.      **5:18-cr-00275-FB-6**

On August 22, 2018, a federal grand jury sitting in the Western District of Texas, San Antonio Division, returned a seven (7) count Third Superseding Indictment

2

charging Alvizo and five other co-defendants. See Doc. 101.[1] Count 1 charged Alvizo with Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.* Counts 2 and 5 charged Alvizo with Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id.* The Third Superseding Indictment also contained Notice of United States of America's Demand for Forfeiture Allegations, pursuant to Fed. R. Crim. P. Rule 32.2 and 21 U.S.C. §§ 853(a)(1) and (2). *Id.*

On July 30, 2024, a Rearraignment Hearing was held and Alvizo plead guilty to Count 1 of the Third Superseding Indictment. See Doc. 301.

On November 12, 2024, Alvizo was sentenced to term of 240 months' imprisonment, followed by 5 years' Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 305, 306.

On September 19, 2025, Alvizo filed a *Pro Se* Motion to Reduce Sentence - USSC Amendment 821, which was denied on October 1, 2025. See Docs. 308, 309.

### 2.    5:21-cr-00352-FB-2

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Texas, San Antonio Division in Criminal Nos. 5:18-cr-00275-FB-6; 5:21-cr-00352-FB-2, which is immediately followed by the Docket Entry Number.

On January 19, 2022, a federal grand jury sitting in the Western District of Texas, San Antonio Division, returned a twelve (12) count Superseding Indictment charging Alvizo and five other co-defendants. See Doc. 32. Count 1 charged Alvizo with Conspiracy to Distribute 500 Grams or More of A Mixture or Substance Containing A Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.* Counts 7 and 8 charged Alvizo with Possession with Intent to Distribute 500 Grams or More of A Mixture or Substance Containing A Detectable Amount of Methamphetamine, Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and  18 U.S.C. § 2. *Id.* The Third Superseding Indictment also contained Notice of United States of America's Demand for Forfeiture Allegations, pursuant to Fed. R. Crim. P. Rule 32.2 and 21 U.S.C. §§ 853(a)(l) and (2). *Id.*

On the same day, the government filed an information under 18 U.S.C. § 851 ("§ 851 Enhancement"), stating previous drug conviction to be relied upon in seeking increased punishment for Alvizo. See Doc. 51.

On July 30, 2024, a Rearraignment Hearing was held and Alvizo plead guilty to Count 1 of the Superseding Indictment pursuant to a Plea Agreement. See Docs. 234, 235.

On November 12, 2024, Alvizo was sentenced to term of 240 months'

imprisonment, 10 years' Supervised Release, no Fine or Restitution, and a Mandatory

Special Assessment Fee of $100. See Docs. 239, 240.

**B.      Statement of the Relevant Facts**

      1.      Offense Conduct

            **a.      5:18-cr-00275-FB-6**

The following offense conduct was summarized from investigative materials

from the U.S. Drug Enforcement Administration and the factual basis of the plea

agreement.

> Case reports reflect in November 2017, the Drug Enforcement
> Administration (DEA) initiated an investigation of Vidal Morales, an
> individual who resides in the San Antonio, Texas area. DEA agents
> working in an undercover capacity made controlled purchases of
> methamphetamine with Morales. The investigation established Morales
> was a distributor of large quantities of crystal methamphetamine. During
> the course of the investigation, DEA agents received authority to intercept
> wire and electronic communication over cellular telephones used by
> Morales and a criminal associate, Manuel Esquivel, who lives in San
> Antonio, Texas. Agents determined Esquivel was receiving crystal
> methamphetamine from a source in Mexico, later identified as Diego
> Alvizo, who delivered the methamphetamine to Esquivel and others using
> various unindicted transporters from Eagle Pass and Del Rio. DEA
> concluded Esquivel, Morales, and Miguel Linan were all obtaining the
> methamphetamine from the same source of supply (Avizo) in Mexico.
> Linan was part of an organization that received kilogram quantities of ice
> — methamphetamine from Mexican sources of supply for distribution in
> the San Antonio area. The defendant worked in conjunction with several
> other co-conspirators to achieve the organization's goals. In addition, Paul
> Cortez and Daniel Javier Martinez worked with Esquivel, Morales, and
> Linan to deliver the methamphetamine to the buyers.

During the course of the wire conversations from Manuel Esquivel's cellular telephone on - March 27, 2018, agents intercepted a conversation between Diego Alvizo and Esquivel. Alvizo directed Esquivel to call "Pauly" (referring to Paul Cortez) and sell one kilogram of methamphetamine to Cortez. Alvizo further directed Esquivel to collect the money for the one kilogram and told Esquivel to weigh the methamphetamine prior to conducting the drug transaction. Esquivel then calls Cortez and they agree for Cortez to pick up the methamphetamine at Esquivel's residence. Esquivel instructed Cortez to bring a scale as Alvizo wanted the methamphetamine to be weighed as to avoid any problems.

On March 27, 2018, DEA agents established surveillance at Esquivel's residence and at approximately 6:45 p.m., observed a white Dodge Charger arrive. Cortez was observed exiting the vehicle and met with Esquivel outside the residence. Then they both entered Esquivel's residence. At approximately 6:57 p.m., agents intercepted a telephone conversation on Esquivel's telephone who handed the telephone to Cortez so Alvizo could speak with Cortez directly. Cortez advised Alvizo "it's like one and nine" referring to the weight of the methamphetamine. Esquivel then got on the telephone and told Alvizo "its 1008, but it doesn't have a lot of plastic." Esquivel further advised Alvizo that he was going to sell the methamphetamine to Cortez and indicated Cortez would be back in an hour with the money for the one kilogram of methamphetamine. Esquivel handed the telephone to Cortez and Alvizo informed Cortez to ensure he returned to Esquivel's residence and Cortez acknowledged.

After Cortez left Esquivel's residence, officers with the San Antonio Police Department (SAPD) attempted to conduct a traffic stop on Cortez' vehicle. The officer asked him to exit the vehicle, but Cortez drove away from the scene at a high rate of speed. Two SAPD officers and a Texas Department of Public Safety (DPS) trooper pursued Cortez' vehicle. An SAPD helicopter also assisted in the chase and location of Cortez' vehicle. Cortez stopped at a dead-end street and exited the vehicle. He grabbed a plastic bag from his vehicle and threw the bag over the fence

6

of a nearby home. Cortez then returned to his vehicle and attempted to flee again. However, officers were able to detain him. The plastic bag was retrieved by the officers and was found to contain approximately one kilogram of crystal methamphetamine. Cortez' vehicle was searched, and officers found a large kitchen digital scale. The methamphetamine was submitted to the DEA laboratory for analysis. The lab report confirmed the substance was d-methamphelamine hydrochloride with a net weight of 991.7 grams and a purity level of 99%. Therefore, the defendant conspired to possess 981.7 net grams of methamphetamine (actual) with intent to distribute.

DEA agents executed a consent search of Esquivel's residence in San Antonio, Texas and recovered approximately four kilograms of methamphetamine. The methamphetamine was submitted to the DEA lab for analysis. The lab report confirmed the substance was d-methamphetamine hydrochloride with a net weight of 3,956 grams and a purity level of 100%. Therefore, the defendant conspired to possess 3,956 net grams of methamphetamine (actual) with intent to distribute.

Alvizo is held responsible for a total 492.7 grams of methamphetamine and 9,825.7 grams (9.8 kilograms) of methamphetamine (actual). However, the 492.7 grams of methamphetamine will not change the offense level established by the amount of methamphetamine (actual). Therefore, the 492.7 grams will not be used to convert the amount to Converted Drug Weight.

Based on information provided by case agent, Diego Alvizo was the source of supply for Manuel Esquivel, Vidal Morales, and Miguel Linan who further sold and distributed the methamphetamine to other individuals in the San Antonio area. Paul Cortez and Daniel Javier Martinez worked with Esquivel and Linan to deliver the methamphetamine to the buyers. Alvizo directed the distribution of at least 10 kilograms of methamphetamine throughout the San Antonio, Texas, area. The defendant will be given an adjustment for leadership for the direction of at least three individuals, as described in the offense conduct.

See PSR ¶¶ 10, 12-24. [2]

### b.   5:21-cr-00352-FB-2

This investigation was conducted by multiple agents and officers from the United States Drug Enforcement Administration (DEA), the San Antonio Police Department (SAPD), the Hondo Police Department (HPD), United States Border Patrol (USBP), and the Fayette County Sheriffs Office (FCSO). The DEA reports reflect that Matthew James Santillano, Ruben Lee Munoz, Renae Elizabeth Herrmann, Erica Ann Ayala, Jessica Nicole Salinas-Robles, along with multiple unindicted co-conspirators were involved in the sale and distribution of illicit substances in the Western District of Texas. The offense conduct was prepared utilizing the reports of investigation and the Factual Basis of the Plea Agreement.

From approximately December 2020 to January 2022, this drug trafficking organization, led by Matthew James Santillano, was supplied multikilogram amounts of illegal narcotics from various sources of supply. Santillano worked with Diego Alvizo, also known as "Gordo," to obtain large amounts of methamphetamine from an unidentified supplier. DEA agents identified Alvizo as a methamphetamine source of supply located in Mexico for Santillano. These illegal narcotics were distributed mainly in Hondo, Texas, and San Antonio, Texas. The illegal narcotics distributed by the Santillano Drug Trafficking Organization (DTO) included methamphetamine, marijuana, and cocaine. Santillano enlisted Ruben Lee Munoz, Renae Elizabeth Herrmann, Erica Ann Ayala, and Jessica Nicole Salinas-Robles to help distribute methamphetamine in Hondo and San Antonio. Santillano maintained contact with Alvizo throughout the conspiracy regarding the various shipments being confiscated and individuals being arrested.

On December 2, 2020, the Hondo, Texas Police Department (HPD) seized 26 grams of methamphetamine from Santillano, via traffic stop. On

---

[2]   "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

February 23, 2021, the San Antonio Police Department (SAPD) seized 979.63 grams of methamphetamine from Santillano subsequent to a traffic stop. Subsequent to these arrests, case agents determined Santillano and co-defendant Erica Ayala sold methamphetamine to confidential sources (CS) on several occasions. In April 2021, two separate OS's received methamphetamine from Santillano. On April 9, 2021, a CS obtained 27.7 grams of methamphetamine from Santillano, and on April 13, 2021, a CS purchased 3.44 grams of methamphetamine from Santillano for fifty dollars.

On May 23, 2021, U.S. Border Patrol agents seized 3,861 grams of methamphetamine from Renae Herrmann, via traffic stop, is she was traveling west of Carrizo Springs, Texas. From June 10, 2021, through July 17, 2021, DEA intercepted communications over Santillano's phones. On June 12, 2021, Herrmann informed Santillano, via text message, that she did not have any citations or reports to provide him which indicated she no longer had possession of the methamphetamine she was traveling with in Carrizo Springs, Texas. Alvizo contacted Santillano and reiterated that proof of the methamphetamine seizure was needed, as Alvizo was convinced Hermann stole the narcotics from the DTO. Agents determined Santillano (who obtained the narcotics from Alvizo) was responsible for providing Herrmann with the methamphetamine she was found with on May 23, 2021, for further distribution.

Available DEA laboratory reports for the May seizure indicate the defendant conspired to possess with intent to distribute a net weight of 3,861 grams of methamphetamine hydrochloride with a purity of 100%. June 2021 seizures reflect the defendant possessed 1,997 grams of methamphetamine hydrochloride with a purity of 100%. The total amount of methamphetamine Alvizo is responsible for conspiring to possess is 5,858 grams of methamphetamine actual.

Alvizo conspired as to the possession and distribution of at least 5,858 (5.86 kilograms) grams of methamphetamine actual throughout the duration of the instant offense. Lastly, the defendant qualifies for an aggravating role adjustment pursuant to USSG §3B1.1(b). The

9

defendant's participation in this conspiracy was protracted in that he managed and supervised other co-defendants in the possession and transportation of kilogram quantities of methamphetamine actual throughout the duration of the conspiracy.

Matthew James Santillano supervised Ruben Lee Munoz, Renae Elizabeth Herrmann, Erica Ann Ayala, and Jessica Nicole Salinas-Robles throughout the conspiracy. Furthermore, he organized shipments of the illicit substances and maintained contact with the co-defendants and Alvizo regarding the aspects of the distribution. As such, Santillano was a manager and supervisor in this criminal activity. Alvizo directed the DTO from Mexico, requiring the conspirators who lost loads to provide documentation of their losses and repayment of loads they were suspected of stealing/losing.

Ruben Lee Munoz, Renae Elizabeth Herrmann, Erica Ann Ayala, Jessica Nicole Salinas-Robles conspired to possess with intent to distribute amounts of methamphetamine. As such, all co-conspirators are equally culpable since they conspired with each other and jointly possessed the illicit substances with intent to distribute. They are considered average participants whose activities were integral to the success of the Santillano DTO. As such, their roles are neither aggravating nor mitigating.

See PSR ¶¶ 11, 25-33.

## 2.     Plea Proceeding

On July 30, 2024, a Rearraignment Hearing was held before Judge Fred Biery. See Docs. 301; 253. Alvizo plead guilty to Count 1 of the Third Superseding Indictment in Docket No. 5:18-cr-00275-FB-6 and Count 1 of the Superseding Indictment in Docket No. 5:21-cr-00352-FB-2. See Doc. 234. Pursuant to written plea agreements in both cases, and Rule 11(c)(1)(A), the government agreed to dismiss the

10

remaining counts after sentencing; recommended a three-level reduction for acceptance of responsibility; and agreed to the sentences in Docket Nos. 5:18CR00275 and 5:21CR00352, to be served concurrently with each other. *Id.* The district court ordered the U. S. Probation Department to prepare a Presentence Report ("PSR").

3.    <u>Presentence Report Calculations and Recommendations</u>

On September 20, 2024, the U.S. Probation Officer prepared Alvizo's PSR and it was revised on October 28, 2024. The 2023 Guidelines Manual, incorporating all guideline amendments, was used to determine Alvizo's offense level pursuant to U.S.S.G. § 1B1.11. See PSR ¶ 38. Counts One in 5:18CR00275 and 5:21CR00352 were grouped for guideline calculation purposes. See PSR ¶ 39.Count Group 1: Conspiracy to Possess with Intent to Distribute 50 grams or More of Methamphetamine calls for a Base Offense Level of 38 because Alvizo was held accountable for a total of 15,683.7 grams (15.68 kilograms) of methamphetamine (actual) pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(1). See PSR ¶ 40. Two (2) levels were added because the offense involved the importation of amphetamine or methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5). See PSR ¶ 41. Another two (2) levels were added because Alvizo was directly involved in the importation of a controlled substance, pursuant to U.S.S.G. §§ 2D1.1(b)(16)(C) and (E). See PSR ¶ 42. Four (4) levels were added for his role in the offense as organizer or leader, pursuant to U.S.S.G. § 3B1.1(a). See PSR

11

¶ 44. The PSR calculated Alvizo's Adjusted Offense Level to be level 46. See PSR ¶ 46. Alvizo received a three (3) level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b). See PSR ¶¶ 47-48. The PSR calculated Alvizo's Total Offense Level to be level 43. See PSR ¶ 49. His total criminal history points of six (6), placed him in Criminal History Category III. See PSR ¶ 55. Alvizo was designated as a career offender under USSG § 4B1.1(b), he was assigned a Criminal History Category of VI. See PSR ¶ 56. Based upon a Total Offense Level of 43 and a Criminal History Category of VI, the guide line imprisonment range was Life. See PSR ¶ 78.

4.    Sentencing Proceeding

On November 12, 2024, a Sentencing Hearing was held before Judge Fred Biery. See Docs. 305; 239. The Court sentenced Alvizo to 240 months as to Count 1 of the Third Superseding Indictment in Docket No. 5:18-cr-00275-FB-6 and 240 months as to Count 1 of the Superseding Indictment in Docket No. 5:21-cr-00352-FB-2, to run concurrently; for a total term of 240 months' imprisonment. See Docs. 306; 240. It is followed by supervised release for a total term of 10 years, consisting of 5 years on Count 1 of the Third Superseding Indictment in Docket No. 5:18-cr-00275-FB-6 and 10 years as to Count 1 of the Superseding Indictment in Docket No. 5:21-cr-00352-FB-2, all to be served concurrently. *Id.* The Court also ordered to pay a Mandatory Special Assessment Fee of $200. *Id.* No direct appeal was filed in this

case.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled

13

to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *United States v. Batamula*, 823 F.3d 237 (5th Cir. 2016). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S.

14

365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Alvizo must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill*

test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Alvizo] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead

16

guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *United States v. Grammas*, 371 F.3d 281 (5th Cir. 2004); *United States th v. Conley*, 349 F.3d 837, 839 (5th Cir.2003). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A criminal defendant is also entitled to constitutionally effective assistance of counsel on direct appeal as of right. See *Evitts v. Lucey*, 469 U. S. 387, 396 (1985); *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014); *United States v. Reinhart*, 357 F. 3d 521, 531 (5th Cir. 2004). A criminal defendant has a Sixth Amendment right to the

effective assistance of counsel on direct appeal. *Evitts*, 469 U.S. at 396. Claims for ineffective assistance of appellate counsel are governed by the two-part *Strickland* standard. See *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).

In order to prove ineffective assistance of appellate counsel, Alvizo must first show that his attorney's performance was deficient, and second, he must demonstrate that such deficiency caused him prejudice. See *Strickland*, 466 U.S. at 687; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). To prevail on his claim that his attorney failed to adequately brief an issue on direct appeal, Alvizo must show initially that the appeal would have had, with reasonable probability, a different outcome if his attorney adequately addressed the issue. See *Jones*, 163 F.3d at 302. "This requires that [the Court] counter-factually determine the probable outcome on appeal . . ." *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). Alvizo must then demonstrate that his attorney's deficient performance led to a fundamentally unfair and unreliable result. See *Goodwin*, 132 F.3d at 176. A claim of ineffective assistance of counsel is reviewed *de novo*. See *Williamson*, 183 F.3d at 461. The Court must first determine whether there is a reasonable probability that, but for counsel's deficient performance, the result of the appeal would have been different.

Counsel is not deficient for not raising every non-frivolous issue on appeal. See *Williamson*, 183 F.3d at 462. Instead, to be deficient, the decision not to raise an issue

18

must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as

may appear appropriate." 28 U. S. C. § 2255.

## V. <u>DISCUSSION</u>

As a preliminary matter, Alvizo respectfully requests that this Court be mindful

that *pro se* pleadings are to be construed liberally. See *United States v. Kayode*, 777

F.3d 719 (5th Cir. 2014) (*Pro se* pleadings are to be held to less stringent standards than

formal pleadings drafted by lawyers, and should therefore be liberally construed);

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S.

519, 520 (1972) (same).

> **A.** **<u>Pretrial Counsel's Failure To: (1) Communicate with Alvizo and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Alvizo of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.</u>**

> 1. <u>Communicate with Kelly and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial.</u>

Chapter 1, Rule 1.4: Communication of the Texas Rules of Professional Conduct

states that:

> (a) A lawyer shall:

> > (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as

defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Jaime Efrain Cavazos ("Cavazos") was Alvizo's appointed counsel from pretrial proceedings through sentencing. From the outset, Cavazos failed to establish reasonable communication with Alvizo, denying him the ability to effectively participate in his defense. Cavazos' actions fell below the standard of professional conduct required by *Strickland v. Washington*, 466 U.S. 668 (1984), and applicable norms, depriving Alvizo of his Sixth Amendment right to effective assistance of

counsel.

Here, there could be times when Cavazos visited Alvizo. However, Alvizo was led to believe that his cooperation and truthful information would result in a motion from the government recommending a sentence of eight to nine years, as conveyed by the prosecutor through Cavazos. Yet, counsel never followed up to verify whether such a motion was filed or to hold the government accountable for honoring its promise.

An effective attorney would have confirmed in writing the government's position regarding Alvizo's cooperation, ensured that all promises were documented in the record, and promptly informed him of any changes or failures by the prosecution to follow through. Cavazos' silence and lack of follow-up left Alvizo uninformed and without the benefit of his cooperation, undermining confidence in the fairness and outcome of the proceedings.

Counsel's duty during plea negotiations includes accurately informing the defendant of their sentencing exposure. See *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). Cavazos misrepresented Alvizo's sentencing guidelines, this is because Prosecutor Rosales told his counsel to inform Alvizo that he would file a motion recommending 8 to 9 years because of his cooperation. Counsel later informed Alvizo that the government had not kept its word — that they had misled him by offering a favorable sentence in exchange for

22

cooperation but never intended to follow through. Subsequently, Cavazos sent him a letter requesting that he make contact. When Alvizo called, Cavazos stated that the government wanted him to continue cooperating while incarcerated. Alvizo explained that he was willing to do so only if the government presented a new agreement to reduce his sentence. Cavazos then advised that the government had no intention of making such an offer and that he would not assist further, adding that he was not being paid to continue representation.

Had Alvizo been properly informed of his actual sentencing exposure, there is a reasonable probability that he would have chosen to proceed to trial. See *Hill*, 474 U.S. at 59; *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). The misinformation from counsel regarding the likely sentence not only undermined the voluntariness of Alvizo's plea but also constituted a fundamental defect in representation that prejudiced Alvizo's defense. See *Strickland*, 466 U.S. at 693-94. The Supreme Court has emphasized that ineffective plea advice can rise to a constitutional violation when it materially affects a defendant's decision to plead guilty. See *Frye*, 566 U.S. at 144; *Lafler*, 566 U.S. at 162-63.

Beyond pressuring Alvizo into pleading guilty, Cavazos failed to develop any strategic defense plan should Alvizo choose to go to trial. Effective representation requires counsel to investigate the facts of the case, assess potential defenses, and

present these options to the defendant. See *Wiggins v. Smith*, 539 U.S. 510, 523-24 (2003); *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008). Cavazos made no effort to discuss or prepare for trial, depriving Alvizo of the opportunity to weigh his options fully and effectively. This lack of preparation further demonstrates Cavazos' failure to provide the minimum level of professional assistance required by the Sixth Amendment. See *Strickland*, 466 U.S. at 691.

The cumulative effect of Cavazos' deficient representation—failing to communicate effectively, misleading Alvizo about his sentencing exposure, and neglecting to prepare a defense—resulted in Alvizo receiving a 240-month sentence. The disparity between the promised sentence and the actual sentence underscores the prejudice Alvizo suffered. See *Glover v. United States*, 531 U.S. 198, 203-04 (2001) (any additional prison time due to ineffective assistance constitutes prejudice). Moreover, Cavazos's failure to accurately explain the consequences of the plea rendered Alvizo's decision involuntary and uninformed, violating his constitutional rights. See *Brady v. United States*, 397 U.S. 742, 748 (1970).

In sum, Cavazos' deficient performance undermined the fairness of the proceedings and resulted in a manifest injustice. Had Alvizo received constitutionally effective assistance, there is a reasonable probability that he would have chosen to go to trial or negotiated a more favorable plea agreement. Accordingly, Alvizo's

24

conviction and sentence should be vacated, and he should be afforded the opportunityto proceed to trial or renegotiate a plea with effective representation.

> 2. Failure to Conduct An Adequate and Independent Pretrial Investigation

Defense counsel has a constitutional duty to conduct a "reasonably substantial, independent investigation" into both the facts of the case and applicable law to provide effective assistance. See *Neal v. Puckett*, 239 F.3d 683, 688 (5th Cir. 2001) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332-33 (5th Cir. 1983)). This duty is well established by the Supreme Court in *Strickland v. Washington*, which states:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Cavazos failed to conduct a reasonable and independent pretrial investigation, as required by constitutional standards. Counsel did not thoroughly research relevant case law, investigate key facts, or explore potential defenses.

Specifically:

        a.     Failure to Investigate Drug Quantities

Cavazos did not challenge the government's assertions regarding the drug quantities attributed to Alvizo, despite the lack of evidence in the alleged amounts. A reasonable investigation would have sought to verify or contest these quantities, which were critical to Alvizo's sentencing exposure under the United States Sentencing Guidelines. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (failure to investigate facts affecting sentencing is prejudicial).

        b.     Failure to Examine Alvizo's Role in the Offense

Cavazos failed to properly investigate and present evidence regarding Alvizo's actual role in the alleged offense. The record clearly demonstrates that Alvizo was not a leader, organizer, or supplier in any capacity. Evidence showed that Matthew Santillano was the individual exercising control and direction over others involved in the conduct. Despite this, the government and counsel failed to clarify Alvizo's limited role, resulting in a mischaracterization of his involvement.

The true supplier in the operation was Javier Hernandez, who later died in a car accident. Because Hernandez is deceased and never faced prosecution, authorities effectively shifted blame to Alvizo. Available information also indicates that Hernandez had acted as an informant, a fact believed to have been known to both the DEA and the

26

District Attorney. Counsel's failure to investigate or present these facts deprived the court of an accurate understanding of Alvizo's actual role and led to an unjust enhancement of his culpability. *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (counsel's failure to investigate defendant's role undermines effective assistance).

        c.       Failure to Challenge the Two-Level Increase for Drug Importation

Cavazos failed to object to the two-level importation enhancement under U.S.S.G. §2D1.1(b)(5), even though there was no evidence that Alvizo knowingly participated in or facilitated drug importation. Alvizo's presence in Mexico was the result of kidnapping and coercion, not voluntary involvement in trafficking. He was taken against his will from Piedras Negras to Montemorelos, Nuevo León, under threats that his family would be harmed.

Despite reporting these facts to the DEA, no action was taken, and Alvizo received no credit for later surrendering himself. The Fifth Circuit has held that the importation enhancement applies only where a defendant knowingly engages in or aids importation, not where the connection is incidental or coerced. See *United States v. Rodriguez*, 666 F.3d 944 (5th Cir. 2012); *United States v. Serfass*, 684 F.3d 548 (5th Cir. 2012).

By failing to object, Cavazos allowed an unjustified enhancement to stand,

increasing Alvizo's guideline range and resulting in a harsher sentence than warranted.

> d.    Failure to Seek Independent Investigative Resources

Cavazos failed to file a motion requesting funds for a private investigator, as permitted under 18 U.S.C. § 3006A(e). The Fifth Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case. See *Sawyer v. Butler*, 799 F.2d 1474, 1508 (5th Cir. 1986) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Cavazos limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without conducting any independent inquiries to corroborate or challenge the government's evidence.

> e.    Prejudice to Alvizo

Cavazos' failure to conduct a meaningful investigation prejudiced Alvizo by depriving him of a viable defense and leaving the government's case uncontested. As the Supreme Court has made clear, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. at 534.

> f.    Had Cavazos conducted a thorough investigation

Evidence could have been uncovered to challenge the drug quantities attributed

to Alvizo, potentially reducing his sentencing exposure under the Guidelines. Investigating Alvizo's role in the conspiracy could have undermined the prosecution's characterization of him as a leader, which significantly enhanced his sentence. Independent evidence might have disproven the allegation that Alvizo imported controlled drugs from Mexico, further weakening the government's case. These failures resulted in Alvizo being unprepared to challenge the prosecution effectively, leaving him with no meaningful choice but to plead guilty under misinformed circumstances. The Supreme Court and Fifth Circuit both recognize that prejudice arises when counsel's failures undermine the reliability of the outcome. See *Strickland*, 466 U.S. at 694; *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014).

In light of the above, Cavazos' failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Alvizo of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Alvizo's conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

3.    Failure to Attempt to Negotiate a Favorable Plea Agreement

Effective assistance of counsel during plea negotiations is a cornerstone of the Sixth Amendment. The Supreme Court has emphasized that a defendant must be

29

adequately informed of "the relevant circumstances and the likely consequences" of pleading guilty versus proceeding to trial in order to make an intelligent decision. See *Lee v. United States*, 582 U.S. ___ (2017); *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel's role includes providing accurate information about potential sentencing exposure, plea offers, and the strengths and weaknesses of the case.

Where a defendant pleads guilty or rejects a plea deal based on misadvice or inadequate representation, this constitutes deficient performance under *Strickland*, if the failure falls below an objective standard of reasonableness. Furthermore, the defendant must demonstrate prejudice by showing a reasonable probability that, but for counsel's errors, they would have chosen to proceed differently. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Court extended the right to effective assistance of counsel to plea-bargaining, making clear that: (1) Counsel must communicate all plea offers to the defendant; and (2) Counsel must provide competent advice on the benefits and risks of accepting or rejecting such offers.

Deficient advice during plea negotiations can violate the Sixth Amendment if the defendant is prejudiced by the resulting decision.

Cavazos failed to make any meaningful effort to negotiate a favorable plea

30

agreement on Alvizo's behalf, despite the government's apparent willingness to consider cooperation-based leniency. The Fifth Circuit has emphasized that failure to pursue plea discussions or to convey the government's position constitutes ineffective assistance where it results in the loss of a more favorable outcome. See *United States v. Herrera*, 412 F.3d 577, 580–81 (5th Cir. 2005).*

Furthermore, Cavazos failed to act as an effective advocate during plea discussions and cooperation negotiations. Instead of actively pursuing or documenting a plea agreement that reflected Alvizo's cooperation and limited role, counsel passively relied on verbal assurances from the prosecutor that the government would recommend a sentence of eight to nine years. Competent counsel would have initiated and negotiated a written plea or cooperation agreement, ensuring that the government's promises were placed on record and enforceable under *Santobello v. New York*, 404 U.S. 257 (1971).

The Supreme Court has recognized that the plea-bargaining stage is a "critical stage" of criminal proceedings, requiring effective assistance of counsel. See *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).* Cavazos failed to provide such assistance by neglecting to communicate clearly with Alvizo about plea options, failing to seek a concrete agreement, and failing to ensure that Alvizo understood his rights and the potential sentencing consequences.

31

Additionally, Cavazos did not object or move to compel the government when it failed to honor its cooperation promise, nor did he advise Alvizo of his right to appeal or pursue post-sentencing relief under Rule 35(b). His lack of diligence and communication deprived Alvizo of the opportunity to obtain the reduced sentence he had been led to expect. Had counsel acted with reasonable competence, there is a strong likelihood that Alvizo would have received a substantially lower sentence pursuant to a negotiated plea or cooperation motion.

Accordingly, Cavazos' deficient performance during plea negotiations violated Alvizo's Sixth Amendment rights. His failure to provide accurate advice, negotiate effectively, and explore all available options prejudiced Alvizo, resulting in a significantly harsher sentence than he reasonably anticipated. Under *Strickland* and its progeny, Alvizo has demonstrated both deficient performance and prejudice. As such, his conviction and sentence should be vacated, and relief granted to allow him to proceed to trial or renegotiate his plea with effective assistance of counsel.

**B.** **Sentencing Counsel's Failure To: (1) Properly Discuss and Explain the PSR to Alvizo Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable; and (4) Failure to File a Notice of Appeal and Preserve Appellate Rights Deprived Alvizo of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

Counsel's duties at sentencing include ensuring that the defendant fully

32

understands the contents and implications of the PSR, raising substantive objections to incorrect or unsupported enhancements, and advocating for mitigation to secure a fair and just sentence. See *Strickland*, 466 U.S. at 688. Sentencing counsel's failure to fulfill these obligations renders their performance deficient and prejudicial, violating the defendant's Sixth Amendment rights.

1.    Failure to Review and Explain the PSR

Alvizo's sentencing counsel, Cavazos, failed to review or explain the PSR's findings with Alvizo, leaving him unable to understand the sentencing calculations or challenge its inaccuracies. This failure deprived Alvizo of his right to make informed decisions and undermined his ability to meaningfully participate in his defense. The Fifth Circuit has consistently held that effective representation requires counsel to review the PSR with the defendant and explain its potential impact. See *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (failure to explain PSR prejudices the defendant by denying an opportunity to address inaccuracies).

2.    Failure to File Substantive Objections to the PSR

Cavazos' failure to challenge critical PSR findings resulted in unjust sentencing enhancements that significantly increased Alvizo's sentence.

a.    Drug Quantity Calculation

The PSR attributed 15.68 kilograms of converted drug weight to Alvizo, leading

33

to an enhanced Base Offense Level under U.S.S.G. § 2D1.1(a)(1). However, there was no evidence proving Alvizo's accountability for this quantity beyond a reasonable doubt. Under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), any fact that increases the penalty for a crime must be proven beyond a reasonable doubt. The Supreme Court extended this principle in *Alleyne v. United States*, 570 U.S. 99, 103 (2013), requiring that mandatory minimum-triggering facts also be submitted to the jury. Cavazos' failure to object to the PSR's unsubstantiated drug quantity finding constituted deficient performance.

Properly calculated, Alvizo's drug amount should have aligned with his plea to Count 1 of the Third Superseding Indictment: 50 Grams or More of Methamphetamine and Count 1 of the Superseding Indictment: 500 Grams or More of A Mixture or Substance Containing A Detectable Amount of Methamphetamine, corresponding to a Base Offense Level of 30 under U.S.S.G. § 2D1.1(c)(5), covering the combined total from his two charges on which he pleaded guilty to, "at least 500 G but less than 1.5 KG of Methamphetamine."

b.      Leadership and Aggravating Role Enhancements

The PSR imposed a four-level leadership and two-level aggravating role enhancement under U.S.S.G. §§ 3B1.1(a) and 2D1.1(b)(16)(C) and (E), which Cavazos failed to contest. The Guidelines require a leadership and aggravating role

34

enhancements only when the defendant exercises significant control over others in a criminal organization. See *United States v. Turner*, 319 F.3d 716, 724 (5th Cir. 2003). Counsel failed to investigate and present evidence showing that Alvizo was not a leader, organizer, or supplier in the offense. The record indicates that Matthew Santillano directed the operation, yet both the government and counsel failed to clarify Alvizo's limited involvement. The actual supplier, Javier Hernandez, died in a car accident and was reportedly an informant known to the DEA and the District Attorney. After his death, authorities shifted blame to Alvizo. Counsel's failure to uncover or present these facts prevented the court from understanding Alvizo's true, minor role and resulted in an unjust increase in his perceived culpability.Cavazos neglected to argue for a mitigating role reduction under U.S.S.G. § 3B1.2, which applies to defendants substantially less culpable than others involved in the offense.

          c.      Importation Enhancement

The two-level importation enhancement under U.S.S.G. §2D1.1(b)(5) was improperly applied to Alvizo, as there was no evidence that he knowingly participated in or facilitated the importation of methamphetamine. Alvizo's presence in Mexico was the result of kidnapping and coercion, not voluntary involvement in drug trafficking.

The Fifth Circuit has held that the enhancement applies only when a defendant

knowingly engages in or aids importation, not when the connection is incidental or involuntary. See *Rodriguez*, 666 F.3d 944; *Serfass*, 684 F.3d 548.* Counsel's failure to object to the enhancement allowed an unsupported increase to stand, raising Alvizo's guideline range and resulting in a harsher sentence.

> d.   Erroneous Application of the Career Offender Enhancement

Alvizo was sentenced as a career offender because before he was convicted in federal court of the present offense, Alvizo had at least two prior felony convictions of either a crime of violence or a controlled substance offense, enumerated as follows:

1)   04/24/2003: Conspiracy to Possess with Intent to Distribute Cocaine (Docket No. DR-03-CR-376(1), in U.S. District Court, Western District of Texas, Del Rio, TX. On July 8, 2003, Alvizo pled guilty. On October 10, 2003, Alvizo was sentenced to 70 months' imprisonment; and

2)   03/25/2009: Possession with the Intent to Distribute Controlled Substance (Docket No.: 4:09-CR-048-A(01), in U.S. District Court, Northern District of Texas, Fort Worth, TX. On June 19, 2009, Alvizo pled guilty. On October 9, 2009, Alvizo was sentenced to 77 months' imprisonment.

Here, Alvizo contests that he had at least one felony convictions of either a crime of violence or a controlled substance offense, explained as follows:

Count 1 (5:18-cr-00275-FB-6): Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Methamphetamine; Count 1 (5:21-cr-00352-FB-2): Conspiracy to Distribute 500 Grams or More of A Mixture or Substance Containing A Detectable Amount of

Methamphetamine; and 2003's Conspiracy to Possess with Intent to Distribute Cocaine Are Not Controlled Substance Offenses.

In *United States v. Dupree,* No. 9-13776 (11th Cir. Jan.18, 2023)(en banc), the Eleventh held that the definition of "controlled substance offense" in USSG § 4B1.2(b) does not include inchoate offenses, such as conspiracy and attempt. This is another victory for the defense in using the sea change in administrative deference recognized by the Supreme Court in *Kisor v. Wilke,* 139 S. Ct. 2400 (2019). The Eleventh Circuit's decision begins this way:

> This appeal requires us to consider whether an inchoate offense qualifies as a "controlled substance offense" for purposes of the career offender sentencing enhancement under the United States Sentencing Guidelines. U.S. Sent'g Guidelines Manual § 4B1.2(b) (U.S. Sent'g Comm'n 2018). In this case, the district court sentenced Brandon Dupree as a career offender based partly on his conviction for conspiring to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. Dupree appealed his sentence, arguing that his § 846 conspiracy conviction could not serve as a predicate for his career offender enhancement because the Guidelines' definition of "controlled substance offense" omitted conspiracy and other inchoate crimes.

A panel of this Court affirmed Dupree's sentence, concluding that the decisions in *United States v. Weir,* 51 F.3d 1031 (11th Cir. 1995), and *United States v. Williams,* 54 F.3d 690 (11th Cir. 1995), foreclosed his argument. *United States v. Dupree,* 849 F. App'x 911 (11th Cir. 2021) (unpublished), reh'g en banc granted, opinion vacated 25 F.4th 1341 (11th Cir. 2022). The court granted Dupree's petition to rehear the case

en banc. After careful consideration, and with the benefit of oral argument, we hold that the definition of "controlled substance offense" in § 4B1.2(b) does not include inchoate offenses. Therefore, Dupree's sentence was vacated and remanded to the district court for resentencing.

Dupree argues that he was not a career offender under the Guidelines. A defendant is considered a career offender for purposes of sentencing if, among other things, the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense" and his "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S. Sent'g Guidelines Manual § 4B1.1(a). Dupree concedes that his prior state drug convictions qualified as controlled substance offenses. But he argues that his § 846 conspiracy conviction does not count as the required third predicate offense because it was not a controlled substance offense. Section 4B1.2 provides:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b). The commentary in Application Note 1 to § 4B1.2 adds that the term "'controlled substance offense' include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2(b) cmt. n.1.

38

Dupree contends that his § 846 conspiracy conviction is not a controlled substance offense because § 4B1.2(b)'s "controlled substance offense" definition unambiguously excludes inchoate offenses. Because the Guideline is unambiguous, he argues, we must not defer to the commentary's broader definition of controlled substance offense to include inchoate offenses.[3] The Eleventh Circuit agree.

The definition of "controlled substance offense" in § 4B1.2(b) of the Sentencing Guidelines does not include inchoate offenses like conspiracy and attempt. To the extent that this holding conflicts with the Court prior precedent, that precedent is overruled. The district court erred by sentencing Dupree as a career offender because

---

[3]

This question has sharply divided our fellow circuits. The Third and Sixth Circuits sitting en banc, along with panels of the Fourth and D.C. Circuits, have held that inchoate crimes do not qualify as controlled substance offenses under the Guideline. See *United States v. Campbell*, 22 F.4th 438, 440 (4th Cir. 2022) ("Because the Sentencing Guidelines' definition of a 'controlled substance offense' does not include an attempt crime, we must vacate the enhanced sentence[.]"); accord *United States v. Nasir*, 17 F.4th 459, 468–72 (3d Cir. 2021) (en banc); *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1090–91 (D.C. Cir. 2018). Panels of the First, Second, Seventh, and Ninth Circuits, and the Eighth Circuit sitting en banc, have reached the opposite conclusion. See *United States v. Smith*, 989 F.3d 575, 585 (7th Cir.) ("We conclude[] that § 4B1.2's Application Note 1 is authoritative and that 'controlled substance offense' includes inchoate offenses."), cert. denied, 142 S. Ct. 488 (2021); *United States v. Lewis*, 963 F.3d 16, 21–24 (1st Cir. 2020); *United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020); *United States v. Crum*, 934 F.3d 963, 965–67 (9th Cir. 2019); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995). But the First and Ninth Circuit panels suggested their decisions might have been different if they were not constrained by their circuits' prior precedent. See *Lewis*, 963 F.3d at 25 ("None of this is to say how we would rule today were the option of an uncircumscribed review available. That the circuits are split suggests that the underlying question is close."); *Crumb*, 934 F.3d at 966 ("If we were free to do so, we would follow the Sixth and D.C. Circuits' lead."). The Fifth Circuit recently vacated its decision holding that a defendant's conspiracy convictions qualified as controlled substance offenses and will address this question en banc. See *United States v. Vargas*, 35 F.4th 936, 938–940 (5th Cir.), reh'g en banc granted, opinion vacated 45 F. 4th 1083 (5th Cir. 2022).

his conspiracy conviction under 21 U.S.C. § 846 was not a controlled substance offense. The Eleventh Circuit vacate Dupree's sentence and remand for resentencing consistent with an Opinion. Hence, same relief should apply to Alvizo.

Since Alvizo's original sentencing, the Fourth Circuit has held that conspiracy under 21 U.S.C. § 846 is not a "controlled substance offense" . . . See *United States v. Norman*, 935 F.3d 232, 237-38 (4th Cir. 2019). Alvizo argues that the reasoning in *Norman* extends to the conclusion that a RICO conspiracy involving underlying drug offenses similarly cannot be a "controlled substance offense" under USSG § 4B1.2(b).

Specifically, the *Norman* court reaffirmed the principle that although USSG § 4B1.2 extended to certain conspiracy offenses, "'an overt act is an element of the generic definition of 'conspiracy' as incorporated into § 4B1.2." *Id.* at 237 (quoting *United States v. McCollum*, 885 F.3d 300, 308 (4th Cir. 2018)). In contrast, "'conspiracy' under § 846 does not require an overt act." *Id.* at 238 (citing *United States v. Shabani*, 513 U.S. 10, 11 (1994)). Thus the Fourth Circuit concluded that "a 'conspiracy' conviction under § 846 is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b)" and could not be the subject of a career offender enhancement. *Id.* at 239.

The Sentencing Guidelines provide for an increased sentence if the defendant qualifies as a career offender. Two key components for a defendant to qualify as a

40

career offender include whether: (1) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (2) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1. The career offender guideline defines a controlled substance offense, in relevant part, as an offense under federal or state law that prohibits the manufacture, import, export, export, distribution, or dispensing of a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense. USSG §4B1.2(b). The application note to § 4B1.2 provides that a controlled substance offense includes offenses of aiding and abetting, conspiring, and attempting to commit such offense. USSG §4B1.2(b), comment. (n.1).

*Norman* and *Dupree* are substantially relevant in regard to Alvizo's arguments, making clear indication that the interpretation of statutes by district courts are contrary to the Congress' intent. Further, the statutes are too ambiguous to secure a conviction. Since, Alvizo's trafficking offense and § 846 conspiracy should not be considered as a "controlled substance offense" pursuant to USSG § 4B1.2(b). The same applies to Alvizo's circumstance.

In sum, absent the career offender, all the enhancements, and applying *Apprendi* and *Alleyne* logic to this case, Alvizo's Base Offense Level would now be 30. See also

41

2018 Sentencing Guidelines, indicating that "At least 500 G but less than 1.5 KG of Methamphetamine," calls for a Base Offense Level of 30, pursuant USSG § 2D1.1(c)(5). With the 3-level reduction for acceptance of responsibility, Alvizo's Total Offense Level would now be 27 in Criminal History Category of III, establishing an advisory Guidelines range of 87 to 108 months– the supposed recommendation of the prosecution, which is a lesser harsh range of sentence. Here, the Court sentenced Alvizo to a total term of 240 months' imprisonment. Applying the same consideration, Alvizo should be sentenced to 87 months' imprisonment.

3.      Failure to Advocate for Mitigation and Object to Substantive Unreasonableness

Cavazos failed to present meaningful mitigation evidence or argue for a lower sentence based on Alvizo's personal history, coercion, and cooperation with authorities. He also failed to object to the substantive unreasonableness of the sentence under 18 U.S.C. § 3553(a).

Alvizo's primary motivation for cooperating was his autistic children. Every decision he made—especially his full cooperation with the government—was driven by his desire to secure a better future for his children. These deeply human and mitigating factors should have been presented to the court to demonstrate Alvizo's remorse, sense of responsibility, and potential for rehabilitation.

42

Effective advocacy requires counsel to present such personal circumstances and argue that the sentence imposed should be no greater than necessary. See *Wiggins v. Smith*, 539 U.S. 510 (2003); *United States v. Rodriguez-De la Fuente*, 842 F.3d 371 (5th Cir. 2016).*

Additionally, the 240-month sentence imposed was substantively unreasonable given Alvizo's limited role and the errors in the PSR calculations. The Fifth Circuit has emphasized the importance of proportionality in sentencing, ensuring it aligns with the Guidelines and mitigating circumstances. See *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005).

### 4.    Failure to File a Notice of Appeal and Preserve Appellate Rights

After sentencing, Alvizo's attorney, Cavazos, failed to protect his client's appellate rights or identify viable grounds for review. This omission denied Alvizo the effective assistance of counsel on direct appeal and deprived him of the opportunity to challenge serious sentencing errors that inflated his punishment.

Under *Roe v. Flores-Ortega*, counsel has a constitutional duty to consult with a defendant about the advantages and disadvantages of an appeal whenever a rational defendant would want to appeal or the defendant expresses interest in doing so. Here, Alvizo's sentence—driven by multiple questionable enhancements—was so severe that

any rational defendant would have sought appellate review. Yet the record shows no consultation, no notice of appeal filed in Alvizo's behalf.

Had Cavazos fulfilled his duty, he would have recognized multiple meritorious appellate issues. Cavazos could have filed a direct appeal challenging: (1) the improper importation and role enhancements, (2) the government's failure to honor cooperation promises, and (3) the overall unreasonableness of the sentence in light of Alvizo's cooperation and family circumstances.

Each of these issues presented a strong, nonfrivolous basis for appeal. Competent counsel would have at least filed a notice of appeal to preserve Alvizo's rights and allowed appellate review of these significant errors. By failing to do so, counsel deprived Alvizo of his first appeal as of right, a loss the Supreme Court recognizes as presumptively prejudicial under *Flores-Ortega*.

Had Cavazos acted diligently, Alvizo could have obtained relief in the form of a remand for resentencing under the correct guideline provisions. His case illustrates precisely why the Sixth Amendment guarantees effective assistance through every critical stage, including the appellate process.

Accordingly, the Court should vacate the judgment or, at minimum, re-enter it to permit Alvizo to file a timely notice of appeal and receive the effective representation he was constitutionally guaranteed.

## VI. CONCLUSION

In light of the foregoing, it is evident that Alvizo was deprived of his constitutional right to effective assistance of counsel at both the pretrial and sentencing phases of his case. Counsel's failure to adequately inform Alvizo of the implications of his plea, properly object to inaccuracies in the PSR, and advocate for a fair and just sentence constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Alvizo, resulting in a significantly harsher sentence than he otherwise would have received had counsel performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Alvizo's counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Alvizo been properly informed, represented, and advocated for, it is likely he would have received a substantially lower sentence. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

45

For these reasons, Alvizo respectfully requests that the Court grant his § 2255 motion and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: December 5, 2025

DIEGO ALVIZO
REG. NO. 37232-180
FMC FORT WORTH
FEDERAL MEDICAL CENTER
P.O. BOX 15330
FORT WORTH, TX 76119
Appearing *Pro Se*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DIEGO ALVIZO, #37232-180 | UNITED STATES OF AMERICA |

**(b)** County of Residence of First Listed Plaintiff    **TARRANT**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FMC FORT WORTH - FEDERAL MEDICAL CENTER
P.O. BO 15330
FORT WORTH, TX 76119

Attorneys *(If Known)*

SA25CA1743 FB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | / [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine / Injury Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) / [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [x] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28:2255

Brief description of cause:
MOTION TO VACATE

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    [ ] Yes    [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE    JUDGE FRED BIERY    DOCKET NUMBER    5:21-CR-00352-FB-2

DATE

SIGNATURE OF ATTORNEY OF RECORD

December 8, 2025  Diana Garcia, Deputy Clerk

**FOR OFFICE USE ONLY**

RECEIPT # ___    AMOUNT ___    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

MJ-RBF

DIEGO ALVIZO
REG. NO. 37232-180
FMC FORT WORTH
FEDERAL MEDICAL CENTER
P.O. BOX 15330
FORT WORTH, TX 76119

December 5, 2025

Clerk, U. S. District Court
Western District of Texas
San Antonio Division
262 West Nueva Street, Room 1-400
San Antonio, Texas 78207 **SA25CA1743 FB**

RE:  *Alvizo v. United States*
Civil No.  5:25-cv-_____
Crim Nos. 5:21-cr-00352-FB-2; 5:18-cr-00275-FB-6

To the Clerk of Court:

Enclosed please find and accept for filing Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support thereof. Please submit these documents to the Court.

Thank you for your assistance in this matter.

Sincerely,

DIEGO ALVIZO
Appearing *Pro Se*

*Encl. as noted*

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

ESS FIRMLY TO SEAL

# UNITED STATES POSTAL SERVICE ®

# PRIORITY MAIL ®

RDC 03    0 Lb 7.30 Oz    78207    $11.90    S2323Y501866-08

FROM:

TO:

DIEGO ALVIZO
REG. NO. 37232-180
FMC FORT WORTH
FEDERAL MEDICAL CENTER
P.O. BOX 15330
FORT WORTH, TX 76119

Clerk, U. S. District Court
Western District of Texas
San Antonio Division
262 West Nueva Street, Room 1-400
San Antonio, Texas 78207

5:21-CR-352-FB 2

RECEIVED
DEC - 8 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
KN
DEPUTY CLERK

SA25CA1743
FB
MJ-RBF

- ted delivery date specified for domestic us
stic shipments include $100 of insurance (
Tracking® service included for domestic a
d international insurance.**
used internationally, a customs declaratio
Mail Manual at http://pe.usps.com.
ernational Mail Manual at http://pe.usps.com for avai

- does not cover certain items. For details regarding

T RATE ENVELOPE
ATE ■ ANY WEIGHT

CKED
CTED DELIVERY DAY: 12/08/25
USPS TRACKING® #

USPS TRACKING #
9505 5104 4802 5339 2042 67

... 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP




This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.