UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Docket No. 5:18-cr-00275-FB-6 |
| v. | ) Docket No. 5:21-cr-00352-FB-2 |
| | ) |
| DIEGO ALVIZO, | ) San Antonio, Texas |
| | ) November 12, 2024 |
| Defendant. | ) |
| ______________________________ | ) |

# TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE FRED BIERY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE GOVERNMENT:
Adrian Rosales
Karina O'Daniel
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, TX 78216

FOR THE DEFENDANT:
Jaime Efrain Cavazos
Law Office of Jaime Cavazos
1430 South Flores Street
San Antonio, TX 78204

COURT REPORTER:
CHRIS POAGE
United States Court Reporter
262 West Nueva Street, Room 1-400
San Antonio, TX 78207
Telephone: (210) 244-5036
chris_poage@txwd.uscourts.gov

Proceedings reported by stenotype, transcript produced by computer-aided transcription.

*(9:31 a.m.)*

THE COURT: I think the last thing we have then is --

*(Discussion off the record)*

THE COURT: -- the sentencing in two cases with the same defendant, 18-CR-375 and 21-CR-352, United States v. Diego Alvizo.

For the United States on 18-275 [sic].

MR. ROSALES: Good morning, Your Honor. Adrian Rosales for the government.

THE COURT: And for 21-CR-352.

MS. O'DANIEL: Karina O'Daniel, Your Honor.

THE COURT: All right. And for the defense on both cases.

MR. CAVAZOS: Jaime Cavazos for the defense, Your Honor.

THE COURT: All right. Mr. Alvizo, raise your right hand, please.

*(The oath was administered)*

THE COURT: All right. Are you the same Diego Alvizo, represented by Mr. Cavazos, who's convicted in both of these cases having to do with -- Count 1 in each case dealing with methamphetamine?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to visit with Mr. Cavazos about the presentence report?

THE DEFENDANT: Yes, sir. He went and talked to me about the presentence -- about the presentence report --

THE COURT: Okay. Are you ready --

THE DEFENDANT: -- and went over it and, well, there's some things that -- it's not right, but --

THE COURT: Well, he filed some objections. Are you aware of the objections he filed?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Does that say what you thought needed to be corrected?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. And so, Mr. Cavazos, without the objections or any modifications, his sentence comes out to life in prison. So with the objections, if they were sustained, what would that do to the guidelines?

MR. CAVAZOS: Basically, Your Honor, it would make him subject to the 15-year mandatory minimum in the '21 case, I believe it is, because he has a prior conviction. So it would be 180 months. That would be his base.

THE COURT: On the '21 case?

MR. CAVAZOS: Yes. Both cases -- the recommendation by the government on both cases is that they run concurrently.

THE COURT: Well, okay. Mr. Rosales, is that correct, if it's a life sentence, or what is the government's position on the '18 case?

MR. ROSALES: Your Honor, we did agree in the plea agreement to recommend to the Court that the cases run concurrent.

THE COURT: Okay. All right.

MR. CAVAZOS: Your Honor, if it -- if we could approach, I'd like to discuss some things with you in private --

THE COURT: Okay.

MR. CAVAZOS: -- with counsel.

*(At the bench)*

*(Sealed portion filed as another document)*

*(Open court)*

THE COURT: All right. Did I give you the oath, Mr. Alvizo?

MR. CAVAZOS: I don't believe so, Judge.

THE COURT: Okay. If you'll raise your right hand, or best you can.

*(The oath was administered)*

THE COURT: All right. Are you the same Diego Alvizo who is the defendant in both of these cases that were called by the Court?

THE DEFENDANT: Yes, sir.

THE COURT: And have you had enough time -- well, we talked about going over the presentence report.

THE DEFENDANT: I did go over it with my lawyer.

THE COURT: Okay. All right. Well -- and Mr. Rosales, just to make sure that -- the government is okay with -- I'm trying to figure out a way not to have to go through these objections, if they're moot. But if the -- even if the guidelines are at life, the government is okay with the Court taking into consideration some other factors, without official rulings on the objections?

MR. ROSALES: Yes, Your Honor.

THE COURT: Okay. All right. So Mr. Cavazos, with that, are the objections moot?

MR. CAVAZOS: Yes, Your Honor.

THE COURT: Okay. All right. So Mr. Alvizo, Mr. Cavazos is your legal doctor. And I understand you have medical doctors also, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Or you have medical issues, right?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. So Mr. Cavazos has done the best he can with you -- for you. But given that this is your fourth federal felony, there's not a whole lot he can do. Because if I'm reading this right, you were in Del Rio in 2003, and you got 70 months in prison, right?

THE DEFENDANT: Yes, sir.

THE COURT: And then Fort Worth in 2009 and got 75 months, which was reduced to 60?

THE DEFENDANT: No, sir.

THE COURT: That's not right?

THE DEFENDANT: That's not right. I signed for five years on that one in Dallas, and it was three kilos of powder cocaine, possession. And they made me an offer of five kilos -- five years. I signed the paper for five years, and they gave me nine years, hundred -- no, hundred and something months. I did seven years and something in Bastrop.

THE COURT: Okay. All right. But my question or point is, you had a federal drug felony in Del Rio?

THE DEFENDANT: Yes, sir.

THE COURT: And then another one in Dallas/Fort Worth; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And then the third one is 18-CR-275, and the fourth one is 21-CR-352. So that's the problem, that you keep doing these things even though you've been caught and sent to prison. And now, why that happens is a mystery to me, but it happens pretty regularly.

So now you're 50 years old almost, and you have all these health issues. The very least is going to be 15 years, which, sadly, I'm not sure that you will live through that. But given your prior record, 15 years is not enough.

So Ms. O'Daniel, do you have any -- you had mentioned one of the other defendants received 240 months, which is 20 years.

I'm not -- and, obviously, everybody's different in terms of age and health issues and so forth.

But as far as Mr. Alvizo, other than the life sentence, do you have any suggestions?

MS. O'DANIEL: Your Honor, the government's --

THE COURT: Why don't you use the mic.

MS. O'DANIEL: Thank you. I'm sorry.

Your Honor, the government's position is that the other -- one of the other members of the conspiracy, Matthew Santillano, got 240 months. We believe that -- Mr. Alvizo was his supplier. So we don't believe that it -- to go any less would be an appropriate sentence, for the purpose of fairness and justice.

THE COURT: All right. Mr. Rosales?

MR. ROSALES: Nothing else to add, Your Honor.

THE COURT: Okay. All right. Well, Mr. Alvizo, another thing I noticed is that there was some language in the presentence report about money and products being lost and then people who lose it have to do other things to try to make it up and so forth. And, of course, as we all know, these people are not very nice.

In fact, one of the defendants that we have, his modus operandi or method of dealing with people like you or others who would lose their product, or his product, is to have them dipped in a vat of oil and then take them out and strike a

match.

And then others -- Judge Rodriguez had one where the method was to kill the -- right -- well, he had two that were horrible. It was a husband/wife who had gotten on the wrong side of the cartel. And they tied them up and then took a machete and killed their nine-year-old daughter, was the last thing they got to see before they were killed.

THE DEFENDANT: Yes.

THE COURT: So these are not nice people. So I understand why then you get yourself in a hole and try to come out of it. But go ahead.

THE DEFENDANT: I did got into a hole. And everything comes from people that I met in prison and worked together in prison. The number one conspiracy I know -- I mean, I don't know what everybody says, that I was forced in Mexico, right? But I bet everybody said that because I was over there, and now -- coming back and this and that. So everybody threw everything at me.

But my point is, like, the first guy in the conspiracy, he got 20 years, right? But he had guns. He had everything. And they were going -- I talked to him when he got sentenced. They were going to give him 15 years, but he made a stupid remark to the judge. So they gave him 20. See.

And, I mean, I'm the first case. Well, I plead guilty. I didn't -- I never asked for discovery. I never asked no

questions. I sat down and talked to them. I was honest. And then -- and I'm pretty sure they know I was honest to them.

See, I turned in myself because of my little kids. I have two with autism. They don't talk. And the big boy told me, when are you going to take me to school because all my friends, they have their dad taking them to school.

So I decided myself to turn in myself and just get it over with. I didn't know it was that bad. But I don't want to do no more. I mean -- plus, my mom is by herself and my brother, he's -- my mom don't walk no more. They don't have anybody to take care of them. And my kids, well, they don't talk. I have almost two years without seeing them.

THE COURT: Well, they'll have to come visit you. But, of course, you understand that -- I think there were, like, 15 -- this is a gram (indicating). And there were 15,000 of these in the two cases at least, Ms. O'Daniel, that he's responsible for? There's a lot, whatever it was.

MS. O'DANIEL: Yes, Your Honor.

THE COURT: Okay. So you wouldn't want somebody taking some of this methamphetamine to give to your children, right?

THE DEFENDANT: That's one of the drugs that I hate, even though you're not going to believe me or nothing. I know what it could do.

THE COURT: Right. So because these --

THE DEFENDANT: And like I told them, I did plead guilty. I didn't ask no question. It was, like, a total of -- kilos, two kilos that I sell, right. I never saw them, but now I know what a conspiracy is. It's worse than a possession, see. And well, I did -- I did accept my responsibility.

THE COURT: Okay.

THE DEFENDANT: Even though they indicted me so hard, you know, like, comes out -- I signed one for ten to life and the other one, 15 to life, because they recommended to run it concurred. On the 15 to life, it's less drugs than the ten to life. So you see? But it don't matter. It's what it's going to be either way around so --

THE COURT: Sir, when we get to be our age, 15 or 20 years is life.

So Mr. Cavazos, do you agree with that?

MR. CAVAZOS: I do, Your Honor.

THE COURT: Ms. O'Daniel, you're too young to understand, but you will someday.

THE DEFENDANT: The doctor told me, from my heart that -- he goes, well, you have -- your artery is plugged. You probably -- you'll be good another ten years.

I said, I don't know.

THE COURT: Well, I'm sorry for you, but you've created this situation yourself and with perhaps your lifestyle, diet-wise, but then all the drugs and the -- getting

involved with these people.

So you probably will spend the rest of your life in prison regardless of -- but that's up to a higher power than I. But all I can do is pick a number. So whether you survive that, I don't have any control over that. And you will get hopefully reasonably good medical care in the Bureau of Prisons.

Mr. Cavazos, do you -- well, at some point Bureau of Prison needs to get all of his medical records so they can evaluate where to place him at the different levels of medical care. I suspect he will be at the top level but --

MR. CAVAZOS: Yes, Your Honor.

THE COURT: And Officer LaRue, does that go to you all and then to BOP, or how does that work?

PROBATION OFFICER: Typically medical records are -- if they're not included in the PSI, they're sent from the facility where he's being held to BOP.

THE COURT: Okay. All right. And Mr. Alvizo, do you have other medical records from private practitioners from -- that your family might have?

THE DEFENDANT: I was in the hospital where I was over there twice for the same thing -- right now they're going to do some work on my prostate. My dad died of cancer. My sister died at 36 years old from cancer. One of my other sisters have right now a tumor on her head. So it runs in the family.

THE COURT: Yes. I understand.

And, of course, your sisters have all done well and went to college.

THE DEFENDANT: They're not here because I said, no, I don't want -- I didn't want them -- my life is sad, and I regret all my life.

THE COURT: Well, and your dad --

THE DEFENDANT: And I'm sorry to the government, and I did mistakes. The wrong people inside prison, I end up here.

THE COURT: Yeah. Well, and your dad had the same job with the railroad for 32 years. And so you come from a good family. And it's --

THE DEFENDANT: They're all good. I'm the only one.

THE COURT: Okay. Something else. Oh, Del Rio. In 2003, was Judge Moses the judge by that time, or was I still handling it?

THE DEFENDANT: No. It was her.

THE COURT: It was Moses. Okay. All right. Because that's about the time that I handed it off to Judge Moses.

All right. Mr. Rosales or Ms. O'Daniel, anything further before the Court pronounces sentence?

MR. ROSALES: No, Your Honor.

THE COURT: Ms. O'Daniel?

MS. O'DANIEL: No, Your Honor.

THE COURT: Mr. Cavazos?

MR. CAVAZOS: Nothing further, Judge.

THE COURT: All right. Mr. Alvizo, the Court will sentence you to 240 months in prison.

How much would you like if you had your say?

THE DEFENDANT: What do you mean?

THE COURT: Huh?

THE DEFENDANT: How much what, sir?

THE COURT: Well, speak into the mic.

THE DEFENDANT: I didn't hear.

THE COURT: I'm sentencing you to 20 years in prison. How much do you think you should get?

THE DEFENDANT: -- 15 years.

THE COURT: Well, 15 or 20, there's not a whole lot of difference. But given everything else, it's going to be 20 years. So you'll pay a $100 assessment on each case for the -- sir.

THE DEFENDANT: All right.

THE COURT: -- for the Victim of Crime Fund. The 20-year sentence will be on each case to run concurrently. And then if you live through your sentence, you will be on supervised release in both cases for five years, to run concurrently.

PROBATION OFFICER: Your Honor, on --

THE COURT: Actually, it's ten years.

PROBATION OFFICER: That's right.

THE COURT: On the '18 case it'll be five years. On

the '21 case it's ten years. Those run concurrently.

The Court will recommend all available -- 500-hour substance abuse program, all available medical and psychological care that Mr. Alvizo needs and will recommend that he be placed at a Bureau of Prisons medical facility so that he can receive that care.

Ms. O'Daniel, anything further on your matter?

MS. O'DANIEL: No, Your Honor. Thank you.

THE COURT: Mr. Rosales?

MR. ROSALES: No, Your Honor.

THE COURT: Mr. Cavazos?

MR. CAVAZOS: No, Your Honor.

THE COURT: All right. Mr. Alvizo, do you have anything else you want to say or ask?

THE DEFENDANT: Can you recommend me to Fort Worth Medical Center?

THE COURT: To where?

THE DEFENDANT: Fort Worth Medical Center.

THE COURT: Fort Worth. Yes. Sure.

MR. CAVAZOS: Fort Worth.

THE DEFENDANT: That's the closest to my mom. She still lives in Eagle Pass. And I know I'm not going to see her no more.

THE COURT: Okay. All right. Recommend Fort Worth. In fact, we have another defendant who just arrived there

recently for a psychological evaluation. But you probably won't see him. He's in a different population.

All right. Thank you. You all may be excused.

* * *

*(9:56 a.m.)*

-oOo-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date: 1/20/2026 /s/ Chris Poage
United States Court Reporter
262 West Nueva Street
San Antonio, TX 78207